[No. 2673.    April 10, 1922.]

## STATE V. RED RIVER VALLEY CO.

### SYLLABUS BY THE COURT

Chapter 168, Laws 1919, authorizing    and    directing the
counties of the state to levy a tax of three mills on the dollar
for construction and maintenance of public roads in the several
counties and to meet allotments of federal funds under the

State v. Red River Valley Co., 28 N. M. 94

Federal Aid Road Act, is not an act for the raising of "state revenue," and does not violate section 2 of article 8 of the state Constitution, which limits levies of taxes for state revenue to not to exceed four mills on the dollar.

Appeal from District Court, San Miguel County; Leahy, Judge.

Suit by the State of New Mexico against the Red River Valley Company. Judgment for plaintiff, and defendant appeals. Affirmed.

S. B. Davis, Jr., and Ward, Askren & Hedgcock, all of East Las Vegas, for appellant.

A. M. Edwards, Asst. Atty. Gen., and H. S. Bowman, Atty. Gen., for the State.

## OPINION OF THE COURT

PARKER, J. The state brought a suit for the recovery of taxes against the appellant for the year 1920, which resulted in a judgment in favor of the state, from which judgment this cause is here upon appeal.

The tax sued for included a levy of three mills upon the dollar for state road purposes, to which the appellant objected upon the ground that the levy exceeded a constitutional restriction upon the amount of taxes which may be levied. It appears that the total levy in the conuty for state purposes, if the three-mill levy for public highways is to be considererd a state levy, amounts to 8.25 mills upon the dollar. Included in this total tax are levies for public institutions, interest and sinking funds, and redemption of war certificates, amounting to two and a fraction mills. These levies are conceded not to be within the constitutional limitation hereafter to be noticed. Omitting from the computation the levies for charitable and other institutions, interest and sinking funds, and war certificates, and including the levy for public highways, we have a total levy of six and a fraction mills.

The proposition is put forward by counsel for appellant that this levy is in excess of the constitutional re-

striction to be found in section 2 of article 8 of the Constitution. The argument is based upon the proposition that the three-mill levy for public highways is a state tax, and is therefore void, in so far as it exceeds the constitutional limitation.

The constitutional provision is as follows:

"Taxes levied upon real or personal property for state revenue shall not exceed four mills annually on each dollar of the assessed valuation thereof except for the support of the educational, penal and charitable institutions of the state, payment of the state debt and interest thereon; and the total-annual tax levy upon such property for all state purposes exclusive of necessary levies for the state debt shall not exceed ten mills."

The 3-mill levy for roads in question in this case is provided for by chapter 168 of the laws of 1919. Section 1 of the act is as follows:

"Section 1. In order to provide funds for the construction and improvement of public  highways and to enable the state and counties to meet the provisions of the Federal Aid Road Act, approved July 11, 1916, as extended by the Congress at its session ended March 3, 1919, whereby a total of approximately $4,389,000.00 is to be allotted to the state of New Mexico to aid in the construction of highways, conditioned that the state and counties raise a like amount during the three-year period ending with the year 1921, the boards of county commissioners of the several counties of the state are each hereby authorized and directed to make and cause to be collected a special tax levy of three mills on each dollar of the valuation of all property in their respective counties subject to taxation for state and county purposes, which levy shall be made at the regular June meeting of each board of county commissioners in each of the years 1919, 1920, and 1921, and the taxes provided by such levies shall be collected at the times and in the manner provided for the collection of other county taxes and shall be paid into the state treasury without deduction of any percentage thereof and credited to the state road fund. * * *

"The proceeds of such tax levies, or proceeds of the sale of such certificates or debentures except sufficient to pay the interest thereon, shall be used under the direction of the State Highway Commission to meet dollar for dollar allotments of federal funds under said Federal Aid Road Act and any extensions or amendments thereof and for the construction and improvement of public highways in the several counties as nearly as possible in proportion to the funds contributed by each county from said tax levies; and said

special tax levies shall be excepted from the provisions of Section 12 of Chapter 54, and of Chapter 74 of the Session Laws of 1915."

The act of Congress authorizing aid to the states in the construction of highways, referred to in the New Mexico act quoted above, is the Act of July 11, 1916, c. 241, 39 Stat. 355; Fed. Stat. Ann. 1918 Supp., 639 (U. S. Comp. St. §§ 7477a to 7477i, 5150a). Section 1 of the federal act authorizes the Secretary of Agriculture to co-operate with the states through their respective state highway departments in the construction of rural post roads. Section 2 of the act defines the words used in section 1 of the act. Section 3 of the act makes the appropriation of the money by the federal government. Section 4 of the act provides for the apportionment of the money appropriated to the various states. Section 6 of the act provides for the submission to the Secretary of Agriculture project statements setting forth proposed construction of any rural post road or roads by the state highway department of any given state. Upon the approval of such project statements, the Secretary of Agriculture is authorized and directed to certify such approval to the Secretary of the Treasury, who is thereupon required to set aside the share payable under the act to any given state. Upon the findng by the Secretary of Agriculture that any such project so approved by him has been constructed in compliance with the plans and specifications submitted to him, he is directed to cause to be paid to the proper authority of any given state the amount set aside for said project, and he is authorized in his discretion from time to time to make payment on said construction as the same progresses. Section 8 of the act is as follows:

"That there is hereby appropriated and made available until expended, out of any moneys in the national treasury not otherwise appropriated, the sum of $1,000,000 for the fiscal year ending June thirtieth, nineteen hundred and seventeen, and each fiscal year thereafter, up to and including the fiscal year ending June thirtieth, nineteen hundred and twenty-six, in all $10,000,000, to be available until expended under the supervision of the Secretary of Agriculture, upon request from the proper officers of the state, territory,

or county for the survey, construction, and maintenance of roads and trails within or only partly within the national forests, when necessary for the use and development of resources upon which communities within and adjacent to the national forests are dependent: Provided, that the state, territory, or county shall enter into a co-operative agreement with the Secretary of Agriculture for the survey, construction, and maintenance of such roads or trails, upon a basis equitable to both the state, territory, or county, and the United States: And provided also, that the aggregate expenditures in any state, territory, or county shall not exceed ten per centum of the value, as determined by the Secretary of Agriculture, of the timber and forage resources which are or will be available for income upon the national forest lands within the respective county or counties wherein the roads or trails will be constructed; and the Secretary of Agriculture shall make annual report to Congress of the amounts expended hereunder."

This act was amended by the Act of Feb. 28, 1919, c. 69, 40 Stat. 1189; Fed. Stats. Ann. 1919 Supp. 294. Section 5 (U. S. Comp. St. Ann. Supp. 1919, § 7477bb) of that act amends the former act in its definition of rural post roads, and in the limitation to $10,000 per mile, increasing the same to $20,000 per mile which may be contributed by the federal government under the direction of the Secretary of Agriculture. Section 6 of the act (section 7477j) increases the federal appropriation in aid of the states for the purposes of constructing rural post roads and makes other provisions not necessary to mention. Section 7 of the act (section 7477k) provides for the turning over by the Secretary of War to the Secretary of Agriculture war material and equipment suitable for use in the improvement of highways, and provides that the same be distributed among the highway departments of the several states to be used on roads to be constructed in whole or in part by federal aid.

Counsel for appellant state the case in the following words:

"The provision of the Constitution is that taxes levied for state revenue shall not exceed four mills on the dollar. If the tax levied by the 1919 law is for state revenue, it, with other state taxes, must not exceed this limit. If it is levied

for county purposes as distinct from those of the state, as was held by the district court, the constitutional limit does not apply."

The whole question turns, then, upon the meaning of the words "state revenue" as used in the constitutional provision above quoted. A broad, general view of the act in question and of other acts to be noticed discloses the following characteristics:

1. It is an act designed to enable the state to comply with the requirerments of an act of Congress, and to secure the federal aid in the construction of public highways.

2. The tax is compulsorily laid upon the counties, the proceeds are paid into the state treasury to the credit of the state road fund, and are administered and paid out under the direction of the State Highway Commission to meet the federal appropriations.

3. The counties have no control over the funds and no voice in determining the kind, character, or location of the roads. The counties were authrized (chapter 38, Laws 1917) to enter into co-operative agreements with the federal government, in pursuance to section 8 of the federal act above quoted, in the construction of federal aid roads, and to levy a tax of two mills for that purpose, but that power was taken away from counties as to the years 1919, 1920, and 1921, by the act in question, and the compulsory levy of three mills heretofore mentioned was substituted.

4. The state, and not the counties, has, by section 19 of chapter 38, Laws 1917, assented to the provisions of the federal act, and has authorized its State Highway Commission to enter into contracts and agreements with the federal government for the co-operative construction and maintenance of its state roads, which has been done, and it is for the purpose of meeting the obligations of said contracts and agreements that the tax in question has been laid. If these were the only relevant and pertinent considerations in connection with

this statute, it certanly should be held to provide for the raising of "state revenue." In outward form the act purports to provide for state roads, to be constructed under state authority, with funds to be paid out and administered by a state agency in connection with funds contributed by the federal government, with which the state has contracted concerning the matter.

But there are other considerations attending and surrounding this statute.

5. The ordinary method of raising state revenue is not employed in the act. That method is provided for by section 5470, Code 1915, which imposes the duty upon the state auditor to make and order the levy of all state taxes and to certify the same to the board of county commissioners of the respective counties. While not conclusive, this departure indicates a legislative interpretation of the act to the effect it is not a state tax.

6. The highways mentioned in the act are not designated as "state highways," but are called "public highways," and are to be constructed in the various counties, rather than as a state enterprise. In this particular the act is a departure from chapter 38, Laws 1917, which provides for the construction of state highways in counties with state revenue, provided the counties furnish 50 per cent of the money required.

7. The legislative construction of the act to the effect that the tax laid is a county tax and not a state tax appears from the fact that the restriction as to the increasing of taxation by counties, imposed by chapter 54 and 74, Laws 1915, is removed in terms as follows:

"And said special tax levies shall be excepted from the provisions of Section 12, of Chapter 54, and of Chapter 74, of the Session Laws of 1915."

8. The act provides for the collection of taxes in the counties and the expenditure of the same, together with the federal aid funds, upon highways in the counties furnishing the funds. There is no authority

conferred upon the State Highway Commission to treat the collection as a genral fund, expendable generally in the state upon state highways, as is the case under chapter 38, Laws 1917.

It is apparent from this brief review of this highway legislation that there have been two systems adopted by the state. The first was to construct state highways partly with state revenue, and partly with county revenue, as was provided by the act of 1917 above referred to. The second, under the act in question, is to build state highways in the several countes to the extent that funds are contributed by the respective counties, and to make these roads in the counties, under the direction of the State Highway Commission, parts of a complete system of roads running through the various counties of the state. The mere fact that these roads in the respective counties are parts of a general road system and are constructed and maintained under the supervision of a state agency would not seem to be controlling. The road improvement in the respective counties is an improvement especially beneficial in the county where such roads are constructed and maintained. The fact that they are connected up with other roads in adjoinng counties adds, of course, greatly to their value to the people of the county where they are constructed, but that fact does not change the character of the road. The road still remains a county improvement especially beneficial to the people of the county. If the Legislature in the act in question had provided for the establishment of county roads in the respective counties and for the supervision of the construction and maintenance thereof by a state agency, the whole argument put forward here would fail. The roads would then be clearly county improvements, paid for by county taxes, in conjunction with federal aid funds. Is not the act in question in its present form substantially and in effect the same as mentioned above? We think undoubtedly that this is the effect of the statute. The funds contributed by the respec-

tive counties are not in any sense the general funds of the state. They remain in substance and effect the funds of the county. They are simply expended under the direction of a state agency upon improvements in the county contributing funds. Not being state revenue, because not applicable to any general state use, we conclude they do not fall within the limitation of the Constitution above mentioned.

It follows from the foregoing that the judgment of the district court was correct, and should be affirmed, and it is so ordered.

RAYNOLDS, C. J., and HOLLOMAN, District Judge, concur.